UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **ROBERT CRUZ GARZA JR.,** § <br> **TDCJ #2203356,** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **HECTOR PEREZ,** § <br> **SAN ANTONIO POLICE OFFICER,** § <br> **BADGE #0698,** § <br> § <br> **Defendant.** § | SA-20-CV-00097-XR |

## ORDER

Before the Court is Plaintiff Robert Cruz Garza Jr.'s ("Garza") 42 U.S.C. § 1983 Civil Rights Complaint. (ECF No. 6). Currently pending is Defendant Hector Perez's Motion to Dismiss and/or Motion for Summary Judgment. (ECF No. 29). Upon consideration, Defendant's Motion to Dismiss and/or Motion for Summary Judgment (ECF No. 29) is **GRANTED in part and DENIED in part**.

### I. Factual and Procedural Background

According to Bexar County records, in June of 2017, Garza was charged with the offense of driving while intoxicated-3D/M in Case No. 2017-CR-9374; he was subsequently indicted for this offense on August 24, 2017. *See* https://search.bexar.org/Case/CaseDetail?r=fde4b0b2-0a18-473a-99f8-463f0d523bc3&st=s&s=480851&cs=&ct=&=&full=y&p=1_2017CR9374 (last visited May 26, 2021). On January 2, 2018, Garza, who had been released on bond, entered a plea of nolo contendere. *Id.* Judgment was deferred and Garza was ordered to comply with various conditions, including submitting to an in-home breathalyzer and attending an anti-abuse program.

*Id.* However, several weeks later, the trial court was advised that Garza had violated the terms of his supervised release on at least four occasions; as a result, on February 5, 2018, Garza's pretrial supervision was terminated and a warrant was issued for his arrest. *Id.*

On February 21, 2018, Garza was arrested for the offense of "evad[ing] arrest/detention-2nd o[ffense]" in Case No. 377928, as well as pursuant to the outstanding warrant in Case No. 2017-CR-9374. *See* https://search.bexar.org/Case/CaseDetail?r=fde4b0b2-0a18-473a-99f8-463f0d523bc3&st=s&s=480851&cs=&ct=&=&full=y&p=1_377928 (last visited May 26, 2021). On May 31, 2018, Garza was sentenced to seven years' confinement in Case No. 2017-CR-9374 and Case No. 377928 was dismissed with the notation "DSMD-DEF CONV OTHR." (*Id.*).

In January of 2020, while incarcerated at the Texas Department of Criminal Justice ("TDCJ") – Connally Unit, Garza filed this Section 1983 action against the San Antonio Police Department ("SAPD"), alleging a SAPD officer subjected him to excessive force by breaking both of his legs. (ECF No. 1). Plaintiff further maintained that SAPD officers forced him to stand on his injured leg(s) and laughed at him, claiming he was "faking." (*Id.*).

On February 20, 2020, in response to the Court's Order to Show Cause, Plaintiff amended his complaint to name SAPD Officer Hector Perez as the defendant. (ECF No. 6). Garza contends the events giving rise to this cause of action occurred on February 21, 2018 when Officer Perez pursued him during a foot chase until Garza surrendered in a vacant lot at 662 North San Eduardo in San Antonio, Texas. (*Id.*). Garza alleges that following his surrender, Officer Perez broke both of his tibias, which Garza describes as "lower human legs," with a "retractable club," also known as an "ASP." (*Id.*). In his Affidavit in Support of Prisoner's Civil Rights Complaint, Garza alleges Officer Perez broke both of his legs in violation of the Fourteenth Amendment to the U.S.

2

Constitution (Section 1), Due Process of Law, and Equal Protection; the Texas Criminal and Traffic Law; and Chapter 1701 of the Texas Occupations Code. (ECF No. 7).

On February 26, 2021, Defendant, Hector Perez, filed a Motion to Dismiss and/or Motion for Summary Judgment. (ECF No. 29). Although ordered to file his response on or before March 31, 2021, to date, Plaintiff has not responded to the Court's Order. (ECF No. 30).

## II.     Standard of Review

### A.  Motion to Dismiss

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007)). These factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id.* at 555–56. When considering a motion to dismiss under Rule 12(b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

### B.  Motion for Summary Judgment

A motion for summary judgment, on the other hand, requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence presented. FED. R. CIV. P. 56(c). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

3

as a matter of law." FED. R. CIV. P. 56(a); *see Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019); *Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof as to an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (emphasis added). Allegations in the nonmovant's complaint are generally not summary judgment evidence, but the Fifth Circuit has concluded an inmate's verified or sworn complaint can be competent summary judgment evidence. *Compare Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (holding that pleadings are not summary judgment evidence), with *Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003) (holding that inmate declaration sworn to "under penalty of perjury" was competent summary judgment evidence).

The court must draw all reasonable inferences in favor of the nonmovant, refraining from making credibility determinations or weighing the evidence. *Bargher*, 928 F.3d at 444 (citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328–29 (5th Cir. 2017)). However, conclusory allegations, unsubstantiated assertions, and speculation are insufficient to satisfy the nonmovant's burden." *Id.* The Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v.*

4

*Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The nonmovant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

### III. Evidence Presented by Defendant

In support of his motion, Defendant submits the following: Exhibit A: the statement of Jennifer L. Perez, the custodian of records for SAPD COBAN videos, along with a copy of the recording from the device inside of Officer Perez's patrol vehicle taken on the date in question; Exhibit B: the statement of Officer Hector Perez; and Exhibit C: a copy of Plaintiff's medical records for the date in question.

#### A. Video

Defendant submits a copy of the video taken from the device inside of his patrol vehicle relating to the incident which occurred on February 21, 2018.[1] (ECF No. 29, Exhibit A). Throughout this video, none of the parties are visible. The only image depicted is what appears to be the back seat of Officer Perez's patrol vehicle. Further, although the video recording is over an hour long, during the first two and a half minutes, the audio is not very clear. Officer Perez can be heard calling in a SID number, stating he had a "runner," and later yelling for someone to "get on the floor." Then the audio cuts off entirely for approximately twenty-five minutes and resumes when Officer Perez is back at his patrol vehicle waiting for EMS. The remaining audio is also not very clear, although Officer Perez can be heard telling Garza he was not resisting arrest, he was evading arrest and that he would be charged with a felony. Additionally, Officer Perez has a

---

[1] Defendant submitted several files on a single DVD; however, only one file was readable.

discussion with the EMS technician wherein he describes the strike to Garza's leg as "you know that was like a home run probably was what it was." Officer Perez also remarks that "that will teach him."

### B. Officer Perez's Affidavit

In his affidavit, Officer Perez states that on the date in question, he observed a vehicle tailing him and when the vehicle drove around him, the driver looked directly at him. (ECF No. 29, Exhibit B at 2). Officer Perez states he ran the license plate and discovered there was an outstanding warrant out for the driver, who was subsequently identified as Robert Cruz Garza, Jr. (*Id.*). Although Officer Perez activated his overhead lights to initiate a traffic stop, Garza did not immediately pull over. (*Id.*). Officer Perez then contacted the dispatcher and as he was providing Garza's information, Garza's vehicle came to a stop, Garza exited the vehicle and then fled on foot. (*Id.*). Officer Perez states he exited his vehicle and gave chase, following Garza, who was running through private residences and jumping over fences. (*Id.*).

Upon catching up with Garza, Officer Perez ordered him to the ground; however, he states Garza "only smiled and appeared to be catching his breath as he slowly attempted to walk away." (*Id.*). Officer Perez states he again ordered Garza to get on the ground but Garza disregarded his order. (*Id.*). Officer Perez contends that Garza, who was wearing a black hoodie, then lifted his hoodie and Officer Perez "noticed a large black knife that was in a sheath" attached to the front of Garza's pants. (*Id.*). Officer Perez states that when he saw the knife and Garza "made a motion toward it," he quickly deployed his expandable baton and "struck the lower left area of Garza's left leg." (*Id.* at 2-3). Officer Perez maintains the knife was easily accessible to Garza and because he was only a few feet away from Garza, Officer Perez feared for his safety. (*Id.* at 3). Officer

6

Perez further maintains Garza remained standing and although he did not reach for the knife, Officer Perez was still in fear for his safety because the knife remained accessible to Garza who was not complying with Officer Perez's commands to get on the ground. (*Id.*).

Officer Perez states he again ordered Garza to the ground and when Garza again refused, Officer Perez, fearing Garza would attack him with the knife, struck Garza's lower right leg, causing Garza to "collapse." (*Id.*). Once Plaintiff was on the ground, no further force was used and Plaintiff was handcuffed. (*Id.*). EMS was called to the scene; however, it was determined that an officer would transport Garza to University Hospital. (*Id.*). Garza's right leg was x-rayed and he was found to have a non-displaced fracture to his tibia. (*Id.*). Garza's leg was put in a cast and he was given crutches and discharged from the hospital. (*Id.*). Garza was then transported to the City's Detention Center where he was booked for the outstanding warrant as well as for evading arrest/detention-2nd. (*Id.*).

### C. Plaintiff's Medical Records

Plaintiff's medical records from University Hospital reflect he was admitted on February 21, 2018 at approximately 7:00 p.m. (ECF No. 29, Exhibit C at 5). According to the consult notes, Plaintiff complained of pain to his right leg and inability to bear weight. (*Id.* at 9). Notably, Plaintiff's records reflect that the radiographs of the right tibia demonstrate a non-displaced tibial shaft fracture while the radiographs of the left tibia, ankle and foot "are negative for acute fracture." (*Id.* at 10). Plaintiff was treated and released on February 22, 2018 at approximately 1:07 a.m. (*Id.* at 7).

### IV.     Evidence Presented by Plaintiff

Although Plaintiff did not respond to Defendant's motion, his amended complaint and affidavit were submitted under penalty of perjury and, as such, are considered competent summary judgment evidence. *Hart*, 343 F.3d at 764 n.1. In his amended complaint, Garza states that after he surrendered and was "captured" in an empty lot, Officer Perez broke both of his legs. (ECF No. 6). Similarly, in his affidavit, Garza states Officer Perez broke both of his "lower human legs (tibias) while captured at empty lot 662 North San Eduardo, San Antonio, Texas, 78228." (ECF No. 7 at 2). Plaintiff further contends Officer Perez intended to harm him "just for running from officers." (*Id.* at 3).

### V.     Analysis

To state a claim under Section 1983, a plaintiff must allege a violation of rights secured by the Constitution and laws of the United States and further, must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Claims under [Section] 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

In the present case, Plaintiff brings this suit against Officer Perez in his "individual or personal capacity." (ECF No. 6 at 4; ECF No. 7 at 1). To establish personal liability under Section 1983, a plaintiff must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *See Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

1. **Plaintiff's Claims**

A. **Fourteenth Amendment, Due Process and Equal Protection**

Plaintiff alleges Officer Perez broke his legs in violation of the Fourteenth Amendment to the U.S. Constitution (Section 1), Due Process of Law, and Equal Protection. (ECF No. 7 at 2). Section 1 of the Fourteenth Amendment to the U.S. Constitution provides that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. The Fourteenth Amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009). To maintain an equal protection claim, a plaintiff must demonstrate he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent. *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of the adverse impact it would have on an identifiable group. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

In the present case, Garza does not allege he received treatment different from that received by similarly individuals and that the unequal treatment stemmed from discriminatory intent. As such, he fails to state a claim for which relief can be granted. Further, to the extent Plaintiff asserts a due process claim under the Fourteenth Amendment, his claim is also subject to dismissal because the Fourth Amendment provides an explicit textual source of constitutional protection against physically intrusive governmental conduct. *See Petta v. Rivera*, 143 F.3d 895, 901 (5th

9

Cir. 1998). Consequently, the Fourth Amendment, rather than the more generalized notion of substantive due process, must be the guide for analyzing claims of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Accordingly, Plaintiff's claims that he was denied equal protection and due process in violation of the Fourteenth Amendment are **DISMISSED** for failure to state a claim. *Twombly*, 550 U.S. at 555–56.

### B. Texas Criminal Law & Texas Traffic Law

Plaintiff also purports to bring this suit pursuant to Texas Criminal Law and Texas Traffic Law. (ECF No. 7 at 2). However, Plaintiff provides no other facts in support of his claim and, therefore, fails to state a claim for which relief can be granted. *Twombly*, 550 U.S. at 555–56; *see* FED. R. CIV. P. 8(a) (stating pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Further, to the extent Garza is attempting to pursue a claim under the Texas Penal Code, the Texas Penal Code does not create a private cause of action and a victim lacks standing to participate as a party in a criminal proceeding. *Aguilar v. Christian*, 923 S.W.2d 740, 745 (Tex. App. – Tyler 1996, writ denied).

Accordingly, Plaintiff's claim pursuant to Texas Criminal Law and Texas Traffic Law is **DISMISSED** for failure to state a nonfrivolous claim. *Twombly*, 550 U.S. at 555–56.

### C. Texas Occupations Code, Chap. 1701

Garza also purports to bring this suit pursuant to Chapter 1701 of the Texas Occupations Code, entitled "Law Enforcement Officers". (ECF No. 7 at 2). Here too, Plaintiff fails to allege sufficient facts to state a claim. *Twombly*, 550 U.S. at 555–56, 570; *see* FED. R. CIV. P. 8(a). Plaintiff does not identify which provision of Chapter 1701 he is relying on or provide any

explanation as to the relevance of this chapter. In any event, Chapter 1701 also does not create a private cause of action. *Gomez v. City of Pharr*, No. 7:18-CV-342, 2019 WL 448898, at *10 (S.D. Tex. Feb. 5, 2019) (citing *Lundgren v. State*, No. 02-11-00486-CR, 2012 WL 3736515, at *3 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.)).

Accordingly, to the extent Plaintiff purports to bring this suit pursuant to Chapter 1701 of the Texas Occupations Code, he fails to state a claim for which relief can be granted. *Twombly*, 550 U.S. at 555–56.

### D. Excessive Force

Plaintiff's chief complaint is that Officer Perez subjected him to excessive force by breaking both of his legs "just for running from officers." (ECF No. 7 at 3). "The Supreme Court has made clear that 'all claims that law enforcement officials have used excessive force--deadly or not--in the course of an arrest, . . . or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999) (citing *Graham*, 490 U.S. at 395). A plaintiff alleging a Section 1983 claim for the use of excessive force under the Fourth Amendment must show: "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations omitted).

In *Graham*, the Court counseled that the reasonableness of force may be evaluated by looking to factors including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The Court emphasized that the

11

reasonableness of a use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In the present case, Defendant does not dispute he struck Plaintiff with a baton and as a result, Plaintiff sustained a non-displaced tibial shaft fracture to his right leg. (ECF No. 29, Exhibit B at 2-3). Further, although the parties do dispute whether one or both of Plaintiff's legs were broken during the incident, the summary judgment evidence establishes that the radiographs of the right tibia demonstrate a non-displaced tibial shaft fracture while the radiographs of the left tibia, ankle and foot "are negative for acute fracture." (*Id.*, Exhibit C at 10). In any event, there is no question Plaintiff sustained an injury which resulted directly and only from the use of force. *Pena*, 879 F.3d at 619. Consequently, applying the *Graham* factors, the Court considers whether the use of force was reasonable.

The first factor this Court considers is the severity of the crime at issue. *Graham*, 490 U.S. at 396. On the date in question, Officer Perez initially attempted to conduct a traffic stop after discovering Garza had an outstanding warrant for driving while intoxicated. (ECF No. 29, Exhibit B). In this case, there is no evidence Garza was driving while intoxicated on the date in question. *See Pinder v. Skero*, 375 F. Supp. 3d 725 (S.D. Tex. 2019) (severity of crime at issue weighed in favor of finding that use of force against arrestee during traffic stop was reasonable given that arrestee was suspected of driving while intoxicated, the stop escalated into physical conflict, and arrestee repeatedly failed to comply with orders). Instead, Garza had an outstanding warrant due to a 2017 offense for driving while intoxicated. Accordingly, this factor weighs against the necessity for the use of force against Garza.

The second factor the Court considers is whether Garza posed an immediate threat to the safety of the officer or others. *Graham*, 490 U.S. at 396. In his affidavit, Plaintiff states that Officer Perez intended to harm him "just for running from officers." (ECF No. 7 at 3). Officer Perez contends, however, that he struck Garza because he feared for his safety due to his proximity to Garza, the fact that Garza had a knife that was readily accessible, and because Garza repeatedly refused to comply with his orders. (ECF No. 29, Exhibit B at 2-3). However, Officer Perez admits the knife was sheathed and that Garza made no attempt to remove it from its sheath. (*Id.*, Exhibit B at 3).

The video submitted by Officer Perez also raises questions regarding Officer Perez's use of force in this case. In a conversation with the EMS technician, Officer Perez can be overheard describing the strike to Garza's leg as akin to a "home run," suggesting he swung at Garza with his baton with all his might. (ECF No. 29, Exhibit A). Officer Perez also remarks "that will teach him." (*Id.*). These statements would appear to raise a question of fact regarding whether Officer Perez struck Garza out of fear for his safety as he contends or whether Officer Perez was, in fact, teaching Garza a lesson, as Garza alleges, "just for running from officers." Accordingly, the Court finds this factor to be inconclusive.

Lastly, the Court considers whether Garza was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Officer Perez states in his affidavit that he activated his emergency siren in an attempt to pull Garza over, that Garza initially failed to pull over and that when he eventually pulled over, Garza immediately exited his vehicle and fled on foot. (ECF No. 29, Exhibit B at 2). In his affidavit, Plaintiff admits he was "running from officers." (ECF No. 7 at 3).

13

However, Plaintiff also states in his affidavit that when Officer Perez struck him, Garza was "captured," suggesting he was no longer evading arrest. (ECF No. 7). Further, Officer Perez concedes that when he caught up to Garza, Garza appeared to be catching his breath "as he slowly attempted to walk away." (*Id.*). Even so, Officer Perez contends Garza continued to refuse orders to get on the ground. (*Id.*).

While an officer may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate the suspect's compliance, an officer must assess not only the need for force, but also "the relationship between the need and the amount of force used." *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). Given Plaintiff's statement that he was "captured," as well as Officer Perez's admission that Garza was trying to catch his breath and was walking slowly away, the Court finds there is a question of fact regarding whether Plaintiff was evading arrest at the time the use of force was administered. Additionally, given Officer Perez's recorded statements, there is also a question of fact regarding whether the amount of force used was commensurate to the need to effectuate Garza's compliance. Accordingly, the Court finds this factor is also inconclusive.

In summary, Defendant has not established as a matter of law that he did not subject Garza to excessive force in violation of the Fourth Amendment to the Constitution. Genuine issues of material fact exist regarding whether Garza was evading arrest at the time the use of force was administered, whether Officer Perez used force to teach Garza a lesson rather than out of fear for his safety and whether the amount of force used was necessary to effectuate Garza's compliance. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim of excessive force

is **DENIED**. (ECF No. 29).

   2. **Officer Perez's Defense of Qualified Immunity**

In this case, Officer Perez has asserted the defense of qualified immunity. (ECF No. 12). To overcome an official's claim of qualified immunity, a plaintiff must be able to prove "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation omitted). The Court may address these two prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Qualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law. Accordingly, qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 948–49 (5th Cir. 2020) (Clement, J.) (internal quotations omitted) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (Clement, J.)).

For reasons previously stated, there are questions of material fact regarding whether Officer Perez violated Garza's right to be free from excessive force. The resolution of these factual disputes in Garza's favor would conclusively defeat qualified immunity. *See al-Kidd*, 563 U.S. at 735. At the time of Garza's arrest, the law was clearly established that although the right to make an arrest "'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,'" the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. According to Garza's version of the events, at the time Officer Perez struck his leg with a baton with enough force to break his leg, Garza was "captured" and arguably, no longer trying to flee. While the Fourth Amendment's reasonableness

15

test is "'not capable of precise definition or mechanical application,'" the test is clear enough that Officer Perez should have known that he could not forcefully swing a baton at Garza's leg when Garza was not resisting and was "slowly walking away." *Id.* Therefore, Officer Perez has not demonstrated he is entitled to qualified immunity on Garza's excessive force claim.

Because the same factual disputes pertinent to determining whether Officer Perez violated Garza's clearly established constitutional rights are material to deciding whether Officer Perez is entitled to qualified immunity, Defendant Perez's motion for summary judgment is **DENIED** as to his defense of qualified immunity.

## VI. Conclusion

For the foregoing reasons, Defendant Hector Perez's Motion to Dismiss and/or Motion for Summary Judgment (ECF No. 29) is **GRANTED** as to Plaintiff's claims pursuant to the Fourteenth Amendment to the U.S. Constitution (Section 1), Due Process of Law, and Equal Protection; the Texas Criminal and Traffic Law; and Chapter 1701 of the Texas Occupations Code. Further, Defendant Hector Perez's Motion to Dismiss and/or Motion for Summary Judgment (ECF No. 29) is **DENIED** as to Plaintiff's excessive force claim.

**IT IS THEREFORE ORDERED** that Plaintiff's claims against Defendant Hector Perez in his individual capacity pursuant to the Fourteenth Amendment to the U.S. Constitution (Section 1), Due Process of Law, and Equal Protection; the Texas Criminal and Traffic Law; and Chapter 1701 of the Texas Occupations Code are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim of excessive force against Defendant Hector Perez in his individual capacity shall be allowed to proceed.

**IT IS SO ORDERED**.

**SIGNED** on May 28, 2021.

_____
Xavier Rodriguez
United States District Judge